1

2

3

4

5

6

7                IN THE UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11   SCOTT R. SMITH,

12              Plaintiff,              No. 2:12-cv-2184 MCE AC PS

13        vs.

14   ENTREPRENEUR MEDIA, INC.,

15              Defendant.              <u>FINDINGS & RECOMMENDATIONS</u>

16   _____/

17          On January 23, 2013, the court held a hearing on defendant's September 24, 2012

18   motion to dismiss.  Scott R. Smith appeared in pro per.[1]  Mark Finkelstein appeared for

19   defendant Electronic Medica, Inc. ("EMI").  On review of the motion, the documents filed in

20   support and opposition, hearing the arguments of plaintiff and counsel, and good cause

21   appearing therefor, THE COURT FINDS AS FOLLOWS:

22              <u>RELEVANT FACTUAL AND PROCEDURAL BACKGROUND</u>

23          In this case, plaintiff seeks review of two decisions issued by the Trademark Trial

24   and Appeal Board ("TTAB") of the U.S. Patent and Trademark Office ("USPTO"), pursuant to

25   _____

26        [1]  This matter is before the undersigned pursuant to Local Rule 302(c)(21).

1

§ 21(b) of the Lanham Act, 15 U.S.C. § 1071(b).  As set forth in the complaint, plaintiff is an entrepreneur who owns the following domain names: www.smallbusinessexpo.info, www.smallbusinessexpose.info, www.entrepreneurexpo.net, and www.entrepreneurexpo.biz. EMI is a California corporation that owns the marks ENTREPRENEUR MAGAZINE'S SMALL BUSINESS EXPO and ENTREPRENEUR EXPO.

A.     The Federal Action and the Permanent Injunction

While the challenged TTAB decisions date to September 2011, the parties' litigation history stretches back to May 8, 1998 when EMI filed suit in the Central District of California against plaintiff and his business "EntrepreneurPR" for trademark infringement. Entrepreneur Media, Inc. v. Smith, 98-cv-3607-FMC (C.D. Cal.).  In that action, EMI claimed plaintiff's use of ENTREPRENEURPR, ENTREPRENEUR ILLUSTRATED, and ENTREPRENEURPR.COM infringed U.S. Trademark Registration Numbers 1,453,968 and 1,892,783 (both for the mark ENTREPRENEUR).  Compl. ¶ 2.

On June 28, 2000, the District Court for the Central District of California granted EMI's motion for summary judgment against plaintiff on EMI's trademark claim and ordered plaintiff to pay statutory damages in the amount of $337,280.00.  Compl. ¶ 3.  Plaintiff appealed to the Ninth Circuit Court of Appeals, which reversed in part and remanded for trial.  Id. ¶ 4.  On June 23, 2003, following remand and a bench trial, the District Court entered findings of fact and conclusions of law.  Id. ¶ 5.  There, the district judge found that EMI had several federal trademark registrations, including for ENTREPRENEUR EXPO, and that plaintiff had infringed on EMI's trademarks.  Id.; Def.'s Mot. to Dismiss, Ex. D at 7.  The total judgment assessed against plaintiff, including attorneys' fees, was $1,389,818.46.  Compl. ¶ 7.

Additionally, the District Court entered the following permanent injunction against plaintiff ("the permanent injunction"):

> Defendant Scott Smith dba EntrepreneurPR, and his officers,
> agents, servants, employees, and attorneys, and all persons in
> active concert or participation with them, must immediately cease,

and are permanently enjoined from, using the marks ENTREPRENEUR, ENTREPRENEURPR, ENTREPRENEUR ILLUSTRATOR, and/or ENTREPRENEURPR.COM, or any other mark, trade name, or domain name that is a colorable imitation thereof or likely to cause confusion therewith, in commerce or in connection with the sale, offering for sale, distribution, and/or advertising of (1) paper goods and printed matter, and/or (2) advertising and business services, including online services.  This permanent injunction specifically includes, but is not limited to, the "public relations" activities that Scott Smith dba EntrepreneurPR has previously provided under the marks referenced above.

Def.'s Mot. to Dismiss, Ex. A.  On July 10, 2004, the Ninth Circuit affirmed the judgment.

Entrepreneur Media, Inc. v. Smith, 101 Fed. Appx. 212 (9th Cir. 2004).

B.     The Two Withdrawn TTAB Proceedings

On or around late-2007, plaintiff initiated two proceedings before the TTAB: (1) Opposition No. 91180276, in which plaintiff opposed EMI's application for registration of ENTREPRENEUR for audio and visual media products and radio and television production services; and (2) Cancellation No. 92049001, in which plaintiff sought to cancel EMI's registration of ENTREPRENEUR EXPO for trade show-related services.  See Def.'s Mot. to Dismiss, Ex. C at 1-2.  Plaintiff's pleadings in both actions were dismissed for failure to comply with the TTAB's pleading rules and leave to amend was granted.  Id.  One day before the amended pleadings were due, plaintiff filed a notice of withdrawal, and accordingly both of plaintiff's proceedings were dismissed on September 28, 2008 without prejudice.  See id., Ex. D at 5 n.3.

C.     The Two TTAB Proceedings Challenged Herein

1.     EMI'S Mark ENTREPRENEUR EXPO

On March 8, 2011, plaintiff initiated a cancellation proceeding before the TTAB, Cancellation No. 92053724, to cancel EMI's mark ENTREPRENEUR EXPO on grounds of fraud, abandonment, and genericness.  Compl. ¶ 14; Def.'s Mot. to Dismiss, Ex. D at 4.

EMI filed a motion to dismiss in that proceeding, which the TTAB converted to a

motion for summary judgment.  In its motion, EMI sought dismissal of plaintiff's petition on the ground that, because plaintiff had been permanently enjoined from using the mark ENTREPRENEUR or any other mark, trade name or domain name likely to cause confusion therewith, plaintiff did not have a real interest in the proceeding and, thus, did not have standing. Def.'s Mot. to Dismiss, Ex. D.  In response, plaintiff argued that, while the permanent injunction applies to use on "paper goods and printed matter" and "advertising and business services," he intended to use his domain names www.entrepreneurexpo.net and www.entrepreneurexpo.biz in a generic fashion unrelated to printed publications, public relations, or advertising or business services.  See id. at 5.  Plaintiff next argued that he was not enjoined from using the mark ENTREPRENEUR EXPO and that there was no evidence that ENTREPRENEUR EXPO is confusingly similar to ENTREPRENEUR.  Id.  In reply, defendant asserted that the services covered by the injunction are broad and include "online services," and that, because petitioner is enjoined from using ENTREPRENEUR, which forms part of ENTREPRENEUR EXPO, he is enjoined from using ENTREPRENEUR EXPO.  Id. at 6.

On September 22, 2011, the TTAB granted EMI's motion and dismissed the cancellation petition with prejudice.  The TTAB found that the District Court, after acknowledging EMI's mark ENTREPRENEUR EXPO in its findings of fact, issued the permanent injunction enjoining plaintiff from using the mark ENTREPRENEUR.  Based on this, the TTAB held that plaintiff was enjoined from using the mark ENTREPRENEUR EXPO in his domain names and therefore lacked standing to assert a claim of genericness against ENTREPRENEUR EXPO.  See id. at 9-11.  The TTAB also found that plaintiff's belief in damages in the form of future litigation was unfounded in light of the permanent injunction.  Id.

Plaintiff filed a request for reconsideration, which the TTAB denied on February 21, 2012.  Compl. ¶ 16.

2.      <u>EMI's Mark ENTREPRENEUR MAGAZINE'S SMALL BUSINESS EXPO</u>

On May 6, 2011, plaintiff initiated another cancellation proceeding before the

4

1    TTAB, Cancellation No. 92053982, to cancel the mark ENTREPRENEUR MAGAZINE'S

2    SMALL BUSINESS EXPO, which EMI registered on November 28, 2000.  See Compl. ¶ 23;

3    Doc. No. 1 at 92-99.  As grounds for cancellation, plaintiff alleged abandonment as well as fraud

4    in connection with EMI's November 6, 2006 Section 8 Declaration of Continued Use.[2]  EMI

5    filed a motion to dismiss, and plaintiff filed a motion for judgment.

6              In its motion to dismiss, EMI argued that it had already abandoned the mark at

7    issue and, thus, the cancellation proceeding was moot.  See Doc. No. 1 at 92-93.  EMI asserted

8    that it first registered the mark ENTREPRENEUR MAGAZINE'S SMALL BUSINESS EXPO

9    on November 28, 2000, and that, pursuant to statute, it had until May 28, 2011 to renew it.  See

10   15 U.S.C. §§ 1058-1059 (a registered mark expires ten years after registration, and a registrant

11   may renew the mark at any time within one year before end of the ten-year period or within six

12   months after the expiration of that time ("the grace period")).  EMI, however, did not renew the

13   mark either one year before the expiration of the 10-year period or at any point during the grace

14   period.[3]  EMI also argued that plaintiff lacked standing to pursue the cancellation proceeding in

15   light of the permanent injunction that issued from the Central District of California, and that,

16   although plaintiff was enjoined from using the term ENTREPRENEUR, he was free to use the

17   phrase SMALL BUSINESS EXPO, which EMI had disclaimed.

18             In response, plaintiff argued that he had standing because his domain names

19   www.smallbusinessexpo.info and www.smallbusinessexpose.info include a portion of the

20   composite mark (the phrase SMALL BUSINESS EXPO); the permanent injunction did not bar

21

22        [2]  A Section 8 Declaration of Continued Use is a sworn statement, filed by the owner of a
     registration, that the mark is in use in commerce.  Section 8 of the Trademark Act, 15 U.S.C.
23   § 1058.  The purpose of the Section 8 Declaration is to remove marks no longer in use from the
     registry.  See Torres v. Cantine Torresella S.r.l., 808 F.2d 46, 48 (Fed. Cir. 1986) (noting
24   purpose of § 8 and § 9 of Lanham Act is to automatically remove marks no longer in use from
     registry).
25
        [3]  Plaintiff filed his petition to cancel the mark on May 6, 2011, three weeks before the
26   expiration of the grace period.

him from seeking to cancel EMI's registration; he stated a reasonable belief in damage based on the parties' litigation history; and he may seek to cancel registration of the entire mark because of his interest in using a portion of it (SMALL BUSINESS EXPO).

The TTAB disagreed with plaintiff, instead finding that plaintiff lacked standing because he had not shown a real interest in cancelling the mark based on his general interest in future use of only the terms SMALL BUSINESS EXPO, which were disclaimed and which comprised only a portion of EMI's mark ENTREPRENEUR MAGAZINE'S SMALL BUSINESS EXPO.  The TTAB also found, and EMI acknowledged, that plaintiff was free to use the phrase SMALL BUSINESS EXPO without proceeding with the cancellation petition.

As to plaintiff's request for entry of judgment against EMI, plaintiff argued that EMI improperly canceled its registration after plaintiff filed the cancellation petition so as to avoid judgment.  The TTAB again disagreed with plaintiff.  It determined that EMI's registration for ENTREPRENEUR MAGAZINE'S SMALL BUSINESS EXPO expired on its tenth anniversary – that is, November 28, 2010 – and not at the conclusion of the grace period, and thus the mark was abandoned prior to the initiation of the cancellation proceeding.  Alternatively, the TTAB found that EMI decided not to renew its registration long before plaintiff's cancellation petition was filed.  The TTAB, however, declined to enter judgment on plaintiff's abandonment claim due to its finding that plaintiff lacked standing.

D.     The Instant Action

In the complaint filed in this court on August 21, 2012, plaintiff seeks review of these two TTAB decisions pursuant to § 21(b) of the Lanham Act, 15 U.S.C. § 1071(b), which authorizes a party dissatisfied with a TTAB decision to initiate a civil action.

As to the mark ENTREPRENEUR EXPO, plaintiff, who owns the domain names www.entrepreneurexpo.net and www.entrepreneurexpo.biz, contends that he has a bona fide intent to use these domain names in a generic fashion to make information available to entrepreneurs and small businesses dealing with "trademark bullies like EMI," but that, because

1  of the history of these parties, he believes that his use of the domain names will lead to legal

2  persecution.  Plaintiff also asserts that he has an interest in removing the "dead" mark from the

3  register to promote fair and applicable use by him and the general public.  Plaintiff is currently

4  using the ENTREPRENEUR EXPO mark on apparel that is distributed to entrepreneurs and

5  organizations that have an interest in, or that are impacted by, EMI's trademark conduct.  On

6  appeal here, plaintiff argues that the TTAB erred in finding that plaintiff lacked standing.

7          As to the mark ENTREPRENEUR MAGAZINE'S SMALL BUSINESS EXPO,

8  plaintiff, who owns the domain names www.smallbusinessexpo.info and

9  www.smallbusinessexpose.info, admits that EMI has abandoned the mark, but asserts anyway

10  that he has an interest in removing the "dead" mark, again to promote fair and applicable use by

11  him and the general public.  He also again claims that he has a fear of legal persecution if he uses

12  his domain names.  On appeal here, plaintiff argues that the TTAB erred in its application of the

13  standing requirement and erred in holding that EMI's registration expired on the expiration of

14  the mark's tenth anniversary instead of at the end of the grace period.

15          Presently pending is defendant's September 24, 2012 motion to dismiss.  EMI

16  seeks dismissal of plaintiff's appeal of the TTAB's decision concerning the mark

17  ENTREPRENEUR EXPO on the ground that plaintiff lacks standing.  EMI next seeks dismissal

18  of plaintiff's appeal of the TTAB's decision concerning the mark ENTREPRENEUR

19  MAGAZINE'S SMALL BUSINESS EXPO as moot.  Plaintiff opposes the motion.

20                          <u>LEGAL STANDARDS</u>

21          Under the Lanham Act, a party that loses before the TTAB may appeal the

22  decision to the United States Court of Appeals for the Federal Circuit on the closed record of the

23  TTAB proceedings.  <u>See</u> 15 U.S.C. § 1071(a)(4).  In the alternative, the party has the option of

24  presenting additional evidence or raising additional claims in the United States District Court in

25  any district where venue is proper.  <u>See</u> <u>id.</u> § 1071(b)(1).

26          In <u>Dickinson v. Zurko</u>, 527 U.S. 150 (1999), the U.S. Supreme Court held that the

7

1   appropriate standard of review of findings of fact made by the PTO is not the stricter "clearly

2   erroneous" standard, but the more deferential standard of the Administrative Procedures Act, 5

3   U.S.C. § 706.  Id. at 159-65.  Although the Court did not specify whether the appropriate APA

4   standard was "substantial evidence" or "arbitrary and capricious," the Federal Circuit

5   subsequently determined that the "substantial evidence" standard applies to reviews of TTAB

6   decisions.  See On-Line Careline, Inc. v. America Online, Inc., 229 F.3d 1080, 1085 (Fed. Cir.

7   2000).

8          Thus, in an appeal to the Federal Circuit, the court reviews the TTAB's legal

9   conclusions de novo, and reviews its factual findings for substantial evidence.  Aycock Eng'ng,

10  Inc. v. Airflite, Inc., 560 F.3d 1350, 1355 (Fed. Cir. 2009).  In an appeal presented in a civil

11  proceeding in the district court, the district court is an appellate reviewer of facts found by the

12  TTAB and is also a fact-finder based on new evidence introduced to the court.  See 3 J.

13  McCarthy, McCarthy on Trademarks and Unfair Competition, § 21:20, at 21-26 (4th ed.,

14  updated 2012).  Although the district court's review of the TTAB's decision is considered de

15  novo when the parties present new evidence and assert additional claims, the district court also

16  must afford deference to any factual findings made by the TTAB.  See id. § 21:21.

17         Therefore, while new evidence and new issues may be introduced in the district

18  court, an appeal of a decision by the TTAB is a unique procedure because, unlike a true de novo

19  proceeding, findings of fact made by the TTAB are given great weight and are not upset unless

20  supported by substantial evidence.  Id.; see also Zurko, 527 U.S. at 162 (substantial evidence

21  requires reviewing court to ask whether reasonable person might find that evidentiary record

22  supports agency's conclusion); On-Line Careline, 229 F.3d at 1085 (applying Zurko to findings

23  of fact made by the TTAB); Aycock, 560 F.3d at 1355.

24         "Substantial evidence is more than a mere scintilla.  It means such relevant

25  evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated

26  Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938).  The possibility that inconsistent

8

1    conclusions may be drawn from the same record does not render the TTAB's finding

2    unsupported by substantial evidence.  In re Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000).

3                                    DISCUSSION

4    A.    EMI's Mark ENTREPRENEUR EXPO

5              Defendant first seeks dismissal of plaintiff's appeal of the TTAB's decision

6    concerning the mark ENTREPRENEUR EXPO.  EMI argues that plaintiff does not have

7    standing to challenge this mark in light of the permanent injunction.

8              In order to establish a claim for cancellation under the Lanham Act, the party

9    seeking cancellation must prove two elements: (1) that "there is a valid ground why the

10   trademark should not continue to be registered;" and (2) that it has standing.  Star-Kist Foods,

11   Inc. v. P.J. Rhodes & Co., 735 F.2d 346, 348 (9th Cir. 1984) (citations and internal quotation

12   marks omitted); see Herbko Int'l, Inc. v. Kappa Books, Inc., 308 F.3d 1156, 1161 (Fed. Cir.

13   2002).

14             As to the second element, generally there must be a "case or controversy"

15   between the two parties in order for the plaintiff to have standing.  Ritchie v. Simpson, 170 F.3d

16   1092, 1094 (Fed. Cir. 1999).  However, the standing requirement that applies to proceedings

17   before an administrative agency like the TTAB differs from that applicable in the federal courts.

18   Id.  Statute, rather than the "case or controversy" requirement, confers standing before an

19   agency.  Id. at 1095.  Section 14 of the Lanham Act confers standing to cancel a trademark

20   registration on "any person who believes that he is or will be damaged . . . by the registration of

21   a mark . . . ."  15 U.S.C. § 1064.  "[T]here is no requirement that damage be proved in order to

22   establish standing."  Star-Kist, 735 F.2d at 349 (citations and internal quotation marks omitted).

23   The cancellation petitioner need only "plead . . . facts showing a 'real interest' in the

24   proceedings," which requires a demonstration that it "is more than an intermeddler but rather has

25   a personal interest [in the cancellation], and that there is a real controversy between the parties."

26   Id. (citations and internal quotation marks omitted).  "The petitioner . . . must show a real and

                                         9

1   rational basis for [its] belief that [it] would be damaged by the registration sought to be

2   cancelled, stemming from an actual commercial or pecuniary interest in his own mark."  Id.

3             In considering the issue of plaintiff's standing in Cancellation No. 92053724

4   regarding the mark ENTREPRENEUR EXPO, the TTAB determined that the permanent

5   injunction issued by the Central District of California enjoined plaintiff from using the term

6   ENTREPRENEUR as part of a domain name.  The TTAB then determined that plaintiff's fear of

7   future litigation in the event he uses his domain names www.entrepreneurexpo.net and

8   www.entrepreneurexpo.biz was unreasonable in light of the permanent injunction.  Accordingly,

9   the TTAB held that plaintiff did not have a real interest in cancelling EMI's marks and thus his

10  stated basis for standing was insufficient.

11            Because the TTAB issued its decision after converting EMI's motion to dismiss

12  to a motion for summary judgment, the court reviews this decision *de novo*.  This is because the

13  usual deferential review applies only to factual findings of the TTAB and a summary judgment is

14  not a true finding of fact, but is a legal conclusion that there is no factual dispute to be resolved.

15  Material Supply International, Inc. v. Sunmatch Industrial Co., Ltd., 146 F.3d 983, 990 (D.C.

16  Cir. 1998) ("When the TTAB grants summary judgment it does not make findings of fact; rather,

17  it applies Federal Rule of Evidence 56 and concludes as a matter of law that there are no material

18  issues of fact in dispute.") (internal quotations omitted).

19            Reviewing the issue of plaintiff's standing *de novo*, the court turns first to the

20  permanent injunction issued by the Central District of California.  That injunction, in relevant

21  part, enjoins plaintiff from using the marks ENTREPRENEUR, ENTREPRENEURPR, and/or

22  ENTREPRENEURPR.COM, or any other mark, trade name, or domain name that is a colorable

23  imitation thereof or likely to cause confusion therewith, in commerce or in connection with the

24  sale of business services, including online services.

25            In seeking cancellation of the mark ENTREPRENEUR EXPO, plaintiff first

26  asserts his intention to use his "entrepreneurexpo" domain names in a generic fashion to make

1  information available to entrepreneurs and small businesses dealing with trademark bullies like

2  EMI and to "disseminate information and criticize EMI's harmful and vicious conduct against

3  entrepreneurs." Plaintiff claims that he has not taken his domains "live," however, for fear of

4  future legal action by EMI.

5          Plaintiff also asserts an interest in removing a "dead" mark from the register to

6  promote fair and applicable use by him and the general public. At the outset, this reason fails

7  because plaintiff must have a personal interest in cancellation that goes beyond that of the

8  general public. Lipton, 670 F.3d at 1028.

9          As to plaintiff's primary argument concerning his intended use of his domain

10  names, defendant argues that the permanent injunction enjoins plaintiff from using his domain

11  names because (1) the permanent injunction enjoins plaintiff from using the mark

12  ENTREPRENEUR, (2) the mark ENTREPRENEUR EXPO is a colorable imitation of

13  ENTREPRENEUR, and (3) the injunction enjoins plaintiff from using the phrase in "online

14  services."

15          Plaintiff counters that whether the mark ENTREPRENEUR EXPO is a colorable

16  imitation of ENTREPRENEUR is a question of fact that cannot be determined at this procedural

17  posture. This argument, however, is foreclosed by the Findings of Fact and Conclusions of Law

18  issued by the Central District of California in the underlying trademark action. There, the

19  District Court found that defendant had a number of federal trademark registrations, including

20  for ENTREPRENEUR EXPO. The court then determined that plaintiff's marks at issue in that

21  case – ENTREPRENEURPR, ENTREPRENEUR ILLUSTRATED and

22  ENTREPRENEURPR.COM – were "substantially similar in appearance, sound and meaning [to

23  EMI's marks] in that the dominant portion of all marks is identical - 'entrepreneur.'" In light of

24  these and other findings, the District Court held that Smith committed trademark infringement.

25  Here, as in the Central District of California, the "dominant portion" of the marks at issue

26  (ENTREPRENEUR EXPO and ENTREPRENEUR) is identical – "entrepreneur." Accordingly,

1   any factual dispute as to whether ENTREPRENEUR EXPO is a colorable imitation of

2   ENTREPRENEUR was resolved in EMI's favor by the Central District of California in 2003

3   and, accordingly, plaintiff is enjoined by the permanent injunction from using the mark

4   ENTREPRENEUR EXPO in commerce.  See Soro v. Citigroup, 287 Fed. Appx. 57 (11th Cir.

5   2008).[4]  Any objection to that factual determination needs to be brought in the Central District of

6   California, not here.

7            There is, however, another fatal flaw to plaintiff's argument: plaintiff's intended

8   use of his domain names is not "in commerce."  Instead, he has asserted merely an intent to

9   "disseminate information" and to "expos[e] EMI's relentless quest to bully entrepreneurs . . . ."

10  This use is not commercial.  Therefore, plaintiff lacks a "legitimate commercial interest" in the

11  mark at issue.  See Lipton Indus., Inc. v. Ralston Purina Co., 670 F.2d 1024 (Cust. & Pat. App.

12  1982).   Plaintiff's intention to use his domain names as a "non-commercial gripe site" does not

13  confer standing, and he is not prevented from such use under trademark law.  See TMI, Inc. v.

14  Maxwell, 368 F.3d 433 (5th Cir. 2004).  Moreover, generic use of the words ENTREPRENEUR

15  and EXPO are not barred by trademark law.  See New Kids on the Block v. New America Publ.,

16  Inc., 971 F.2d 302, 307-08 (9th Cir. 1992).

17           Insofar as plaintiff argues, as he does in his opposition and as he did at the

18  January 23, 2013 hearing on defendant's motion, that he intends to use his domain names in

19  connection with his public relations company to provide business services for his clients, this use

20  is specifically prohibited by the permanent injunction ("Defendant Scott Smith . . . must

21  immediately cease, and [is] permanently enjoined from, using the marks ENTREPRENEUR . . .

22  or any other mark . . . or domain name that is a colorable imitation thereof or likely to cause

23

24        [4]  In Soro, an alleged trademark infringer was the subject of a permanent injunction that
    prohibited him from using the word "Citigroup" in providing financial services.  The alleged
25  infringer sought to overturn a TTAB denial of his petition for cancellation of the mark.  The
    court held that he did not have a legitimate commercial interest in the disputed "CITIGROUP"
26  mark, and therefore lacked standing to seek cancellation.

1  confusion therewith, in commerce or in connection with the sale . . . of . . . business services,

2  including online services.  This permanent injunction specifically includes, but is not limited to,

3  the 'public relations' activities that Scott Smith dba EntrepreneurPR has previously provided

4  under the marks referenced above.").  Accordingly, plaintiff lacks a legitimate commercial

5  interest in the mark.

6          Finally, to the extent plaintiff fears future litigation for using his domain names,

7  this fear is unreasonable.  "A petitioner for cancellation must show a real and rational basis for

8  his belief that he would be damaged by the registration sought to be canceled, stemming from an

9  actual commercial or pecuniary interest in his own mark."  Akhenaten v. Najee, LLC, 544 F.

10  Supp. 2d 320, 332 (S.D.N.Y. 2008) (internal quotations and citations omitted) (emphasis added);

11  see also Condit v. Star Editorial, Inc., 259 F. Supp. 2d 1046, 1052 (E.D. Cal. 2003) ("A majority

12  of circuits require a commercial interest in a mark, that is, at minimum, a present intent to

13  commercialize a mark.").  If plaintiff intends to use his domain names in a non-commercial

14  manner, then neither the permanent injunction nor trademark law prohibits him from doing so.

15  If, however, plaintiff intends to use his domain names in a commercial manner, he is specifically

16  enjoined from doing so by the permanent injunction.  Accordingly, plaintiff lacks a "real and

17  rational basis" for his fear, and defendant's motion to dismiss this claim should be granted.

18  B.    EMI's Mark ENTREPRENEUR MAGAZINE'S SMALL BUSINESS EXPO

19          EMI next argues that plaintiff's petition for cancellation of the mark

20  ENTREPRENEUR MAGAZINE'S SMALL BUSINESS EXPO is moot because that mark was

21  allowed to expire in 2011 and is therefore already canceled. Any judgment in plaintiff's favor,

22  then, would amount to a "moral victory," which is insufficient to create a case or controversy.

23          On review, the court agrees with defendant that plaintiff's challenge to the mark

24  ENTREPRENEUR MAGAZINE'S SMALL BUSINESS EXPO should be dismissed, albeit not

25  on the ground of abandonment as defendant urges.  Instead, the court finds that plaintiff lacks

26  standing, which, as a component of this court's subject matter jurisdiction, is a matter the court

1  may raise sua sponte.  See Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002) ("a court

2  may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency

3  of the action"); White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) (a challenge to standing under

4  Article III "pertain[s] to a federal court's subject-matter jurisdiction").

5              As previously noted, plaintiff relies on his domain names

6  www.smallbusinessexpo.info and www.smallbusinessexpose.info to confer standing.

7  Essentially, plaintiff argues that he fears legal persecution in the event he takes these domain

8  names "live."  As is evident, these domain names do not include the entire composite mark.

9  Rather, each consists solely of a portion of the composite mark – specifically, of the words

10 SMALL BUSINESS EXPO.  This portion of the mark, however, has been explicitly disclaimed

11 by defendant.  See U.S. Trademark Registration No. 2408039 (registered Nov. 28, 2000)

12 ("Disclaimer: No claim is made to the exclusive right to use 'Small Business Expo' apart from

13 the mark as shown."); see also Smith v. Entrepreneur Medica, Inc., 2011 WL 4871877, at *1

14 (Sept. 22, 2011) ("A disclaimer of SMALL BUSINESS EXPO is of record.").

15             Under 15 U.S.C. § 1056(a), the United States Patent and Trademark Office may

16 require an applicant for a trademark to, or an applicant may voluntarily choose to, "disclaim an

17 unregistrable component of a mark otherwise registrable."  Once a disclaimer is effected, "an

18 applicant has no exclusive rights to the disclaimed component apart from the composite mark."

19 In re Savin Corp., 69 Fed. Appx. 997, 999 (Fed. Cir. 2003) (citing Dena Corp. v. Belvedere Int'l,

20 Inc., 950 F.2d 1555, 1560 (Fed. Cir. 1991)).  Here, plaintiff's domain names do not include the

21 composite mark (ENTREPRENEUR MAGAZINE'S SMALL BUSINESS EXPO) and they do

22 not include the non-disclaimed portion of the mark (ENTREPRENEUR MAGAZINE).  Rather,

23 the domain names consist entirely of the disclaimed portions of the mark.  "A disclaimer of a

24 part of a composite is a concession that that part is descriptive."  McCarthy on Trademarks and

25 Unfair Competition, § 19:65 (West 2013).  Because plaintiff's domain names consist entirely of

26 disclaimed portions of the composite mark, plaintiff cannot reasonably believe that he will be

1   damaged by use of his domain names.

2         The court acknowledges that a disclaimed portion of a mark "does not preclude

3   the registrant from later demonstrating in another case that the disclaimed matter has, with time

4   and use, become distinctive through the acquisition of secondary meaning." McCarthy on

5   Trademarks and Unfair Competition, § 19:65 (West 2013); 15 U.S.C. § 1056(b) ("[n]o

6   disclaimer . . . shall prejudice or affect the . . . registrant's rights then existing or thereafter

7   arising in the disclaimed matter. . . ."). Section 1056(b), however, is inapplicable here because

8   the mark ENTREPRENEUR MAGAZINE'S SMALL BUSINESS EXPO is no longer registered.

9         Accordingly, the court finds that plaintiff lacks standing, and this claim should be

10  dismissed with prejudice.

11        Based on the foregoing, IT IS HEREBY RECOMMENDED that defendant's

12  motion to dismiss be granted, and this action be dismissed with prejudice.

13        These findings and recommendations are submitted to the United States District

14  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen

15  days after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties. Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

18  shall be served and filed within seven days after service of the objections. The parties are

19  advised that failure to file objections within the specified time may waive the right to appeal the

20  District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21  DATED: May 23, 2013

22

23                                    _____
                                      ALLISON CLAIRE
24                                    UNITED STATES MAGISTRATE JUDGE

25

26  /mb;smit2184.mtd.fn

15